IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TONI L. TOOHEY, individually, and as Personal
Representative of the Heirs and the Estate of
FRANK R. TOOHEY, Deceased; ADAM                      CV-09-88-ST
TOOHEY; and BRIAN TOOHEY,

                         Plaintiffs,                     FINDINGS AND
                                                          RECOMMENDATIONS

       v.

THE WYNDHAM WORLDWIDE
CORPORATION HEALTH & WELFARE PLAN;
EMPLOYEE BENEFITS COMMITTEE
WYNDHAM WORLDWIDE CORPORATION;
LIFE INSURANCE COMPANY OF NORTH
AMERICA; and WYNDHAM WORLDWIDE
CORPORATION,

                        Defendants.

STEWART, Magistrate Judge:

///

///

///

1 - FINDINGS AND RECOMMENDATIONS

## INTRODUCTION

Plaintiffs, Toni L. Toohey and her two sons,[1] bring this action individually and on behalf of the heirs and estate of Frank R. Toohey ("Toohey") to recover sums allegedly due under insurance contracts purchased by Toohey and his employer and issued by Life Insurance Company of North America ("LINA"). On July 21, 2009, this court dismissed the First Amended Complaint ("FAC") without prejudice for failure to state a claim upon which relief could be granted. *See* Order adopting Findings and Recommendations (docket #43). The FAC alleged eight claims for relief, seven arising under state-law theories of contract, tort, and fraud, and one seeking benefits under the Employee Retirement Income Security Act ("ERISA"), 29 USC § 1001, *et seq.* The court found that ERISA preempted the state-law claims and dismissed the ERISA claim for failure to name the proper party as a defendant.

On August 18, 2009, plaintiffs filed a Second Amended Complaint ("SAC") alleging five claims for relief under ERISA and adding several new defendants. The First Claim realleges a claim for benefits under § 502(a)(1)(B) (codified at 29 USC § 1132(a)(1)(B)), but now names the proper parties as defendants, namely the Wyndham Worldwide Corporation Health & Welfare Plan ("the Plan") and the Wyndham Worldwide Corporation Employee Benefits Committee ("Plan Administrator"). The Second Claim alleges equitable estoppel against the Plan and Plan Administrator. The Third and Fourth Claims allege ERISA violations by LINA, the Claims Administrator. Whereas the Third Claim seeks injunctive or other appropriate equitable relief pursuant to § 502(a)(3) (codified at 29 USC § 1132(a)(3)), the Fourth Claim alleges a breach of fiduciary duty pursuant to §§ 409 & 502(a)(2) (codified at 29 USC §§ 1109(a), 1132(a)(2),

---

[1] Toohey does not allege the age of her two sons. If they are minors, no motion has been made as yet to appoint them a guardian *ad litem*.

respectively).  The Fifth Claim alleges breach of fiduciary duty by the Plan Sponsor, Wyndham

Worldwide Corporation ("WWC").  Plaintiffs seek injunctive, equitable, and monetary relief

against all defendants and also demand a trial by jury pursuant to FRCP 38(b).  This court has

jurisdiction over these claims pursuant to 29 USC § 1132(e) and 28 USC § 1331.

      LINA moves to dismiss the Third and Fourth Claims pursuant to FRCP 12(b)(6) (docket

#45) and moves to strike the jury trial demand pursuant to FRCP 12(f) (docket #47).  The

remaining Wyndham defendants join both of LINA's motions and move to dismiss the Fifth

Claim pursuant to FRCP 12(b)(6) (docket #50), and also move to strike the jury trial demand

(docket #52).  For the reasons that follow, these motions should be GRANTED.

## STANDARDS

      Motions to dismiss for failure to state a claim pursuant to FRCP 12(b)(6) are governed by

the standards recently enunciated in *Ashcroft v. Iqbal*, 129 S Ct 1937 (May 18, 2009), and *Bell*

*Atl. Corp. v. Twombly*, 550 US 544, 555 (2007).  While the federal pleading standard under

FRCP 8(a) requires only a "short and plain statement of the claim showing that the pleader is

entitled to relief," "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of

the elements of a cause of action will not do.'"  *Iqbal*, 129 S Ct at 1949, quoting *Twombly*, 550

US at 555.  In order to survive a motion to dismiss for failure to state a claim pursuant to FRCP

12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'"  *Id*, quoting *Twombly*, 550 US at 570.  Thus,

> [i]n keeping with these principles a court considering a motion to dismiss
> can choose to begin by identifying pleadings that, because they are no
> more than conclusions, are not entitled to the assumption of truth. While
> legal conclusions can provide the framework of a complaint, they must be
> supported by factual allegations. When there are well-pleaded factual

> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

*Id* at 1950 (the "*Twombly* two-step").

In evaluating a motion to dismiss, the court must accept the allegations of material fact as true, subject to the limits identified in *Twombly*, and construe those allegations in the light most favorable to the non-moving party. *Parks Sch. of Bus., Inc. v. Symington*, 51 F3d 1480, 1484 (9th Cir 1995). In addition to the allegations of the complaint, the court may also consider documents whose authenticity no party questions which are attached to, or incorporated by reference into, the complaint, as well as matters capable of judicial notice. *Knievel v. ESPN*, 393 F3d 1068, 1076 (9th Cir 2005); *Branch v. Tunnell*, 14 F3d 449, 454 (9th Cir), *cert denied*, 512 US 1219 (1994), *overruled on other grounds*, *Galbraith v. County of Santa Clara*, 307 F3d 1119 (9th Cir 2002); *Stewart v. Nat'l Educ. Ass'n*, 471 F3d 169, 173 (DC Cir 2006). The court need not accept as true allegations in the complaint that contradict these sources. *Lazy Y Ranch Ltd., v. Behrens*, 546 F3d 580, 588 (9th Cir 2008), citing *Sprewell v. Golden State Warriors,* 266 F3d 979, 988 (9th Cir 2001).

## **FACTUAL ALLEGATIONS**

The factual allegations of the SAC are substantially the same as alleged in the FAC. Additional facts are provided by those exhibits submitted in connection with the motion to dismiss the FAC which are incorporated by reference into the SAC.

Wyndham Resort Development Corporation ("Wyndham Resort Development"), a subsidiary of WWC, employed Toohey as an account executive until August 4, 2008, when he died in a plane crash. SAC, ¶¶ 12, 13, 19. The plane was a private aircraft piloted by Jason

Ketcheson, also an employee of Wyndham Resort Development. *Id*, ¶ 20. The plane departed

from Seaside, Oregon, and subsequently crashed in Gearhart, Oregon, killing Toohey. *Id*.

As an employee of Wyndham Resort Development, Toohey participated in a benefit

package sponsored by WWC. *Id*, ¶¶ 13, 14. This benefit package provided employees with

medical coverage, disability insurance, life insurance, accidental death and disability ("AD&D")

insurance, and business travel ("BTA") insurance (collectively, "the Plan"). *Id*; Patton Decl.

(docket #25), Ex. A, pp. 19-31 & Ex. B.

At the time Toohey died, multiple insurance policies funded these benefits, including

Policy Nos. OK 980073, ABL 980053, and ABL 980060. SAC, ¶ 14; Patton Decl., Exs. C-E;

Berry Decl. (docket #31-2), Exs. A-C. WWC obtained these three policies from LINA. Patton

Decl., Exs., C, D & E.

Policy OK 980073 was an AD&D policy. Berry Decl., ¶ 1 & Ex. A. WWC paid the

premium on this coverage. *Id*, Ex. A, p. 21 & Ex. C, p. 67. Participants also could elect

additional voluntary AD&D coverage for an additional premium that they were responsible for

paying. *Id*, Ex. A, pp. 8, 21, Ex. B, p. 14 & Ex. C, pp. 65, 67.

Policies ABL 980053 and ABL 980060 provided BTA coverage. *Id*, Ex. B, p. 9, Ex. D,

pp. 4-6 & Ex. E, pp. 6-7, 10. Coverage under the BTA policies was automatic for all WWC

employees who were eligible to participate in the Plan. *Id*, Ex. A, p. 4. WWC paid the entire

premiums for both BTA policies. *Id*, Ex. A, p. 21, Ex. D, p. 5 & Ex. E, p. 5.

All three polices contained the following language:

> This Policy has been issued in conjunction with an employee welfare
> benefit plan subject to the Employee Retirement Income Security Act of
> 1974 ("ERISA"). This Policy is a Plan document within the meaning of
> ERISA. As respects the Insurance Company, it is the sole contract under

which benefits are payable by the Insurance Company.  Except for this, it shall not be deemed to affect or supersede other Plan documents.

The Plan Administrator has appointed the Insurance Company as the named fiduciary for deciding claims for benefits under the Plan, and for deciding any appeals of denied claims.

*Id*, Ex. C, p. 41, Ex. D, p. 29, & Ex. E, p. 20.

WWC never provided Toohey or plaintiffs with copies of the policies, binder letters, or other documents which formed the insurance contracts, but did provide Toohey with several booklets purporting to describe the benefits available under the Plan.  SAC, ¶¶ 15,16.  These included the "About Your Participation" booklet, which contained general information about the administration of the Plan, and the "Life and Accident Insurance Benefits" booklet, which purported to describe the life, AD&D, and BTA coverages under the Plan. *Id*, ¶ 16; Patton Decl., Ex. A, pp. 2-3, 15 & Ex. B, pp. 3-4; Korver Decl. (docket #21), Ex. 1 (collectively referred to as the summary plan description ("SPD")).  The SPD identifies WWC as the Plan's sponsor and the WWC Employee Benefits Committee as the Plan Administrator.  Korver Decl., Ex. 1, p. 19; Patton Decl., Ex. A, p. 19.  The Plan designates LINA as the Claims Administrator.  Patton Decl., Ex. C, p. 41, Ex. D, p. 29 & Ex. E, p. 20.   Under the Plan, LINA was responsible for providing the SPD to the Plan Administrator for dissemination to plan participants and beneficiaries.  SAC, ¶ 17.

///

///

## **FINDINGS**

**I.    Motions to Strike Jury Demands**

6 - FINDINGS AND RECOMMENDATIONS

All defendants move to strike plaintiffs' jury trial demand because "there is no right to a jury trial in ERISA cases." *Ingram v. Martin Marietta LTD Plan for Salaried Employees*, 244 F3d 1109, 1114 (9th Cir 2001), citing *Thomas v. Oregon Fruit Prods. Co.*, 228 F3d 991, 996-97 (9th Cir 2000). The cases plaintiffs cite in opposition to these motions either are not on point or not the law of the Ninth Circuit. Therefore, the court should grants defendants' motions and strike plaintiffs' jury trial demand from the SAC.

## II.    Motions to Dismiss

The SAC makes the same two main contentions as in the FAC. First, plaintiffs claim that Toohey's death was covered under the Plan and that defendants have wrongfully denied their claim for benefits. Second, in the event Toohey's death was not covered by the Plan, plaintiffs claim that either WWC, LINA, or both, are liable for erroneously leading Toohey to believe that the cause of his death would be covered under the Plan. Although plaintiffs couch these allegedly misleading acts in terms of violations of assorted fiduciary duties, the remedy plaintiffs ultimately seek is clear: if they cannot recover under the terms of the Plan, then they seek to either estop defendants from denying coverage under the Plan or to recover the value of the benefits directly from the Plan's fiduciaries.

Defendants move to dismiss the Third through Fifth Claims on the ground that a plaintiff seeking individual, monetary benefits under an ERISA-governed employee benefits plan may not bring claims pursuant to § 502(a)(2) or (a)(3), but is limited solely to the relief available under § 502(a)(1)(B). Plaintiffs respond that they seek more than simple monetary damages and have adequately alleged claims under these other provisions.

### A.    ERISA's Remedial Scheme

"ERISA is a comprehensive and reticulated statute, the product of a decade of congressional study of the Nation's private employee benefit system." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 US 204, 209 (2002), quoting *Mertens v. Hewitt Assocs.*, 508 US 248, 251 (1993) (internal quotation marks omitted). "Congress enacted ERISA to 'protect . . . the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.'" *Aetna Health Inc. v. Davila*, 542 US 200, 208 (2004) (alterations in original), quoting 29 USC § 1001(b). Accordingly, ERISA includes a "carefully crafted and detailed enforcement scheme" found in § 502. *Knudson*, 534 US at 209 (citation and internal quotation marks omitted). Section 502 provides, in part:

> A civil action may be brought –
>
> (1) by a participant or beneficiary –
>
>> (A) for the relief provided for in subsection (c) of this section, or (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
>
> (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
>
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan; . . .

29 USC § 1132(a).

The First and Second Claims arise under § 502(a)(1)(B), and no defendant challenges their sufficiency. Defendants seek to dismiss the remaining claims arising under § 502(a)(2).

B.    __Section 502(a)(2) (Fourth and Fifth Claims)__

Section 502(a)(2) permits a beneficiary to bring a claim for "appropriate relief under

section 1109 [§ 409]."  Section 409(a), in turn, provides that

> [a]ny person who is a fiduciary with respect to a plan who breaches any of
> the responsibilities, obligations, or duties imposed upon fiduciaries by this
> subchapter shall be personally liable to make good to such plan any losses
> to the plan resulting from each such breach, and to restore to such plan
> any profits of such fiduciary which have been made through use of assets
> of the plan by the fiduciary, and shall be subject to such other equitable or
> remedial relief as the court may deem appropriate, including removal of
> such fiduciary.

29 USC § 1109(a).

The Fourth and Fifth Claim are brought pursuant to §§ 409 and 502(a)(2) and allege

violations of various fiduciary duties that defendants allegedly owed to the Plan and its

participants and beneficiaries.

It is well-settled that a claim for breach of fiduciary duty under § 409 may only be

brought to benefit the Plan as a whole.  *See Mass. Mut. Life Ins. Co. v. Russell*, 473 US 134, 140

(1985) (agreeing with petitioner's contention that "recovery for a violation of § 409 inures to the

benefit of the plan as a whole"); *Paulsen v. CNF Inc.*, 559 F3d 1061, 1073 (9th Cir 2009) ("The

Supreme Court has held that recovery for a violation of 29 [USC] § 1109 for breach of fiduciary

duty inures to the benefit of the plan as a whole, and not to an individual beneficiary."), *petition*

*for cert. filed*, ___ USLW ___ (Sept. 23, 2009) (No. 09-356); *Cinelli v. Sec. Pac. Corp.*, 61 F3d

1437, 1445 (9th Cir 1995) ("Individual beneficiaries may bring fiduciary actions against the plan

fiduciaries, but they must do so for the benefit of the plan and not their individual benefit.").

Defendants argue that because the SAC clearly seeks only to recover benefits plaintiffs believe

are personally due to them under the Plan, relief is not available under § 502(a)(2).

9 - FINDINGS AND RECOMMENDATIONS

Plaintiffs make several arguments in opposition.  First, they counter that they seek more than money damages but have also asked for equitable and injunctive relief.  Second, they argue that because both LINA and WWC wear "two or more hats," their liability must be analyzed based on the role they were playing at the time that they engaged in various fiduciary duties.  Third, they argue that LINA has harmed the Plan by accepting premium payments and by failing to pay benefits due under the Plan, thus depriving the Plan of the assets of payments from the insurance policies and the benefits due to them.  Finally, they contend that the full fiduciary role of WWC is still unknown, and it would be premature to dismiss this claim until full discovery has been permitted to uncover what role WWC (and potentially other defendants) has played.

These arguments are nonresponsive to the controlling precedent on point.  It is incomprehensible how LINA's failure to pay insurance proceeds to plaintiffs harmed the Plan.  The Plan is composed of insurance policies that accept premiums for the promise of paying benefits upon the occurrence of covered events.  The premiums are due even if LINA never pays a single claim, and the only person injured by a failure to pay benefits is the party to whom benefits are due.  There is no pot of money the Plan maintains or invests on behalf of its beneficiaries that has been reduced or otherwise impacted by defendants' actions.  None of the fiduciary breaches alleged in the SAC added or subtracted anything from the assets of the Plan.  Plaintiffs' attempt to shoehorn their claims into arguments more properly made with respect pension plans or IRAs is unavailing.  *See*, *e.g.*, *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F3d 1223 (9th Cir 2000) (alleging Plan was injured by failure of employer to make contributions to an IRA created by the employer for the benefit of its employees).

But more importantly, regardless of whether the Plan may have suffered an injury or whether WWC, LINA, or any other entity has violated fiduciary duties, *Russell* and its progeny hold that a claim under § 502(a)(2) is available only for a plaintiff seeking to benefit the Plan. While plaintiffs attempt, through creative drafting, to show that they are seeking to benefit the Plan, in fact, the Plan will gain no benefit from this lawsuit. The prayer for relief shows that plaintiffs have only one thing in mind, namely the recovery of some amount of money paid directly to them. The first prayer is for a judgment and order that the Plan and Plan Administrator pay all benefits due plaintiffs under the Plan, an amount equal to $2,500,000. The second prayer is for an affirmative injunction on behalf of the Plan to LINA that monies be paid "in amounts according to benefits calculations under the insurance policies alleged in an amount of at least $2,500,000 or according to proof at trial, *and for purposes of payment to Plaintiffs*" as beneficiaries under the policy. SAC, p. 14 (emphasis added). The third prayer also seeks a judgment against "LINA and/or Wyndham for breach of fiduciary duties in an amount of at least $2,500,000." *Id.* Thus, when this case is over, if plaintiffs are successful, they will have recovered some amount of money from the Plan. Whether they try to color it as a money judgment, an affirmative judgment ordering LINA to pay the benefits, or restitution of unlawfully withheld benefits, it is clear that they seek $2,500,000 or the benefits available under the Plan.

Because plaintiffs' claim is one for personal monetary benefits, it does not seek to benefit the Plan as a whole. Accordingly, plaintiffs cannot seek relief under § 502(a)(2).

C.    **§ 502(a)(3) (Third and Fifth Claims)**

The Third Claim, and arguably the Fifth Claim, seek to recover "other appropriate equitable relief" under § 502(a)(3).  Individual equitable relief for breach of fiduciary duty is only available under this "catchall" provision in certain circumstances.  As outlined by the Supreme Court in *Varity Corp. v. Howe*, 516 US 489, 512 (1996), § 502(a)(3) authorizes some individualized claims for breach of fiduciary duty, but only "for injuries caused by violations that § 502 does not elsewhere adequately remedy."  Moreover, the remedies available under this subsection are limited to those remedies that were  "traditionally viewed as 'equitable,' such as injunction or restitution."  *Mertens*, 508 US at 255.  Thus, in order to have an actionable claim under § 502(a)(3), a plaintiff must have no other adequate avenue of relief under ERISA and must seek relief that has traditionally been viewed as equitable.  Although a failure to meet either of these conditions precludes a claim under § 502(a)(3), plaintiffs' claims fail on both accounts.

The First Claim seeks to recover benefits plaintiffs believe are due under the Plan.  They admit that § 502(a)(1)(B) is available to seek these benefits.  Because § 502(a)(1)(B) provides plaintiffs with a specific remedy, they may not seek relief under § 502(a)(3).  *Varity*, 516 US at 512; *see also*, *Ford v. MCI Commc'ns. Corp. Health and Welfare Plan*, 399 F3d 1076, 1083 (9th Cir 2005) (holding that because plaintiff had asserted claims under discrete ERISA provisions, including § 502(a)(1)(B), the "catchall" provision of § 502(a)(3) was not available; *Forsyth v. Humana, Inc.*, 114 F3d 1467, 1475 (9th Cir 1997) (holding that employee beneficiaries could not bring claim under § 502(3) where they had a claim under § 502(a)(1)(B)).

Undaunted by this controlling precedent, plaintiffs maintain that they may still sue under § 502(a)(3) because relief under § 502(a)(1)(B) may not be "adequate."  They argue that the Plan documents are ambiguous and contain misinformation.  As a result, if it turns out that Toohey's

death is not covered by the Plan, they will not be able to recover under § 502(a)(1)(B) and will

then need some other remedy to hold defendants responsible for the ambiguity in the Plan

documents which misled Toohey.

As this court has previously indicated, in an action to recover benefits under

§ 502(a)(1)(B), this court is empowered to interpret plan documents and resolve any conflict that

may exist between them.[2]  *See Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc.*, 293 F3d

1139, 1144-45 (9th Cir 2002).  Furthermore, any such conflict must be resolved in plaintiffs'

favor.  *Id*.  However, the simple fact that a plan document was ambiguous or inartfully drafted

does not render the remedy provided by § 502(a)(1)(B) inadequate.  To hold otherwise would

eliminate any distinction between a claim under § 502(a)(1)(B) and § 502(a)(3) because nearly

every claim for benefits that comes before this court involves an argument that some language in

the plan is ambiguous.  This court is not persuaded that every time it decides this issue against a

plaintiff, it must then afford that plaintiff an opportunity to sue the responsible fiduciaries for

their actions in drafting the ambiguous documents.  Rather, the proper remedy for holding plan

fiduciaries accountable for ambiguous or misleading plan language is for the court, when

appropriate, to construe that language against the party who drafted the policy.  *See Bergt*, 293

F3d at 1144-45 (resolving conflict between plan documents in favor of document most favorable

to employee); *McClure v. Life Ins. Co. of N. Am.*, 84 F3d 1129, 1134 (9th Cir 1996) ("ERISA

insurance policies are governed by the rule that ambiguous language is construed against the

---

[2]  This court has also previously indicated that in certain narrow circumstances, plaintiffs may avail themselves of a claim for equitable estoppel.  *See* Findings and Recommendations (docket #37), pp. 16-17; *Spink v. Lockheed Corp.*, 125 F3d 1257, 1262 (9th Cir 1997); *Greany v. W. Farm Bureau Life Ins. Co.*, 973 F2d 812, 821-22 (9th Cir 1992).  Plaintiffs' Second Claim appears to assert such a claim.  Although equitable estoppel is loosely termed an equitable remedy, the Ninth Circuit has held that equitable estoppel is not a remedy available under § 502(a)(3).  *Watkins v. Westinghouse Hanford Co.*, 12 F3d 1517, 1527-28 (9th Cir 1993).  At least one circuit has concluded that it is available under § 502(a)(1)(B).  *See Katz v. Comprehensive Plan of Group Ins.*, 197 F3d 1084, 1090 (11th Cir 1999).

insurer and in favor of the insured.").  In the event the language is not ambiguous, a plaintiff

cannot reasonably contend that she was misled into believing her actions would be covered.  *See*

*Greany*, 973 F2d at 822 ("A plaintiff cannot avail himself of a federal ERISA estoppel claim

based upon statements of a plan employee which would enlarge his rights against the plan

beyond what he could recover under the unambiguous language of the plan itself.").  This court

concludes that the relief available to plaintiffs under § 502(a)(1)(B) is adequate to address their

concerns about the ambiguities and misleading information allegedly contained in the Plan

documents.

Secondly, as discussed above, it is clear that plaintiffs seek monetary damages, not

"equitable relief" as that term has been defined by courts in the context of § 502(a)(3).  *See FMC*

*Med. Plan v. Owens*, 122 F3d 1258, 1261 (9th Cir 1997) (§ 502(a)(3) only allows "the traditional

forms of equitable relief–injunction, mandamus, and restitution"), citing *Mertens*, 508 US at 256.

Although the SAC characterizes the relief plaintiffs seek at various places as "an injunction,"

"equitable relief" or "restitution," their central injury is a denial of benefits, a monetary remedy.

*See Knudson*, 534 US at 210 ("'[a]lmost invariably . . . suits seeking (whether by judgment,

injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are

suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more

than compensation for loss resulting from the defendant's breach of legal duty.'"), quoting

*Bowen v. Mass.*, 487 US 879, 918-19 (1988) (Scalia, J., *dissenting*).  The prayer for relief makes

clear that plaintiffs seek to recover money damages for benefits due under the Plan.  No matter

how they attempt to characterize it,[3] the substance of what they seek is the payment of benefits

due under the Plan and "[w]hen the substance of the relief is monetary . . . such a remedy is not

available under section 1132(a)(3)." *Owens*, 122 F3d at 1262; *see also Knudson*, 534 US at 221

("Because petitioners are seeking legal relief – the imposition of personal liability on

respondents for a contractual obligation to pay money – § 502(a)(3) does not authorize this

action.").

Claims similar to those alleged by plaintiffs were addressed in *Korotynska v. Metro Life*

*Ins Co.*, 474 F3d 101, 103 (4th Cir 2006), where a plaintiff sued for termination of her long-term

disability benefits. She brought her action under § 502(a)(3), claiming that she was not seeking

individualized review of her adverse benefits determination under § 502(a)(1)(B), but was

seeking to reform "the systemic improper and illegal claims handling practices" used by the

insurance company to deny her and other beneficiaries a full and fair review of their claims. *Id*

at 104. The court concluded that the analysis required under *Varity* was "whether the claimant's

injury is addressed by ERISA's other provisions and whether those provisions afford adequate

relief. If so, equitable relief under [§502(a)(3)] will normally not be 'appropriate.'" *Id* at 105,

citing *Varity*, 516 US at 515.

The court found "no question" that the plaintiff was pursuing her own individual benefits

claim. *Id*. The case originated as a claim for benefits; in her amended complaint, the only injury

---

[3] Plaintiffs' attempts to "dance around" the form of relief they truly seek results in such tortured language as that found in paragraph 38 of the SAC where plaintiffs:

> also pray for and request *affirmative injunctive* relief to redress said violations and enforcement by Order for the Claims Administrator to make such *payments of the benefits* and provisions under the policies as herein alleged and demanded to plaintiffs. Plaintiffs request said *injunction* provide other appropriate *equitable relief* to redress said violations including *restitution* of the benefits herein claimed by plaintiffs. (emphasis added).

15 - FINDINGS AND RECOMMENDATIONS

which she complained of was the termination of her benefits; and she insisted that she had not

renounced her claim for benefits, but admitted that her purpose in seeking § 502(a)(3) relief was

to enable her to recover her benefits down the road.  The plaintiff also admitted that relief was

available under this § 502(a)(1)(b), but argued that it would not afford her "adequate" relief by

not forcing the insurance company to answer for its illegal practices.  The court rejected this

argument, choosing to follow "the great majority of circuit courts" in holding that the plaintiff

could not pursue a claim under § 502(a)(3) where she had a § 502(a)(1)(B) claim available.  *Id* at

106-07, citing cases, including *Forsyth*, 114 F3d at 1474-75.  The court also found that a review

of the insurance company's claim handling practices would occur under a § 502(a)(1)(B)

benefits determination because courts were required to consider the insurance company's

decision making process, conflict of interests, and other factors in weighing that determination.

*Id* at 107 (citation omitted).  Moreover, the court concluded that permitting the plaintiff's §

502(a)(3) suit would frustrate the aims of Congress in drafting ERISA's "'carefully crafted and

detailed enforcement scheme'" and would "encourage parties to avoid the implications of section

§ 502(a)(1)(B) [including its deferential standard of review] by artful pleading."  *Id* at 107-08

(internal quotation marks and citations omitted).

Similarly here, the true nature of the relief plaintiffs seek is contractually-based money

damages.  The First Claim under § 502(a)(1)(B) is adequate to pursue this relief and will afford

plaintiffs the opportunity to address the deficiencies in the Plan documents.  Therefore, plaintiffs

cannot seek relief under § 502(a)(3).

///

///

16 - FINDINGS AND RECOMMENDATIONS

///

**D.    Conclusion**

The nature of plaintiffs' claim is for an individualized review of an adverse benefits determination, and the nature of the relief sought is monetary. Therefore, this action may only be brought pursuant to § 502(a)(1)(B).

**RECOMMENDATIONS**

For the reasons discussed above, defendants' motions to dismiss (dockets #45 & #50) should be GRANTED and Claims Three through Five should be DISMISSED with prejudice. Additionally, defendants' motions to strike the jury demand (dockets #47 & #52) should be GRANTED.

**SCHEDULING ORDER**

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due November 30, 2009. If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

DATED this 6th day of November, 2009.


s/  Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge


17 - FINDINGS AND RECOMMENDATIONS